592 So.2d 517 (1991)
Johnny L. COLEMAN
v.
STATE of Mississippi.
No. 90-KA-0664.
Supreme Court of Mississippi.
December 18, 1991.
Thomas D. Lee, Lee & Lee, Forest, for appellant.
Mike C. Moore, Atty. Gen., Ellen Y. Dale, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
Defendant Johnny L. Coleman was convicted of rape, burglary and kidnapping in the Circuit Court of Scott County. At issue in this appeal is the admissibility of his confession while in custody following an illegal arrest and absent a waiver of his right to an "initial appearance" before a judicial officer under Rule 1.04, Uniform Criminal Rules of Circuit Court Practice, and procedural errors during trial. This Court addresses only the Rule 1.04 violation, and reverses and remands for a new trial.

I.
On the night of October 25, 1989, HS, an adult female, fell asleep on the living room couch in her residence. As she awoke at approximately 1:00 a.m. and walked toward her bedroom, she saw a man standing in the kitchen. No lights were on; she screamed. The man grabbed her, placed his hand over her mouth, took her T-shirt off and tied it around her face. She was carried to the bedroom and raped. She could not see the man's face, but she was able to see that he had black hands.
After the attack, the man placed her in her automobile and drove around the countryside *518 for more than an hour before exiting the vehicle. The victim waited a few minutes, removed the shirt from her face, and drove to the Morton police station to report the crime.
On the morning of October 27, 1989, Johnny Coleman was a passenger in and sitting on the back seat of an automobile driven by Deborah Williams, and also occupied by her mother, Lee Gurtha Williams, who was seated on the right front seat of the vehicle. They were passing through Morton en route to Forest.
While travelling through Morton, they were signaled to stop by a police car which turned on its blue lights. Ms. Williams promptly pulled over and stopped her vehicle. She had violated no traffic law.
There were two officers in the car, and one exited the passenger side, approached Williams' vehicle and asked "to talk to Johnny." Coleman exited the right side of the vehicle, was taken to the police car and promptly frisked by the policeman. Although the automobile occupants stated unequivocally that the search revealed no weapon, both officers stated that they confiscated a pocket knife with a blade in excess of three inches from Coleman. Coleman denied having a weapon. Coleman was transported to the police station and charged with carrying a concealed weapon.
Upon arriving at the city jail, Coleman was taken to the interrogation room and questioned about the recent rape of HS. He denied knowledge of the crime. He was requested to submit to medical tests and samplings of his blood, saliva, and hair to "clear things up." Coleman agreed, and for this purpose signed a waiver of rights. After the tests were performed, Coleman was returned to the Morton jail where he was held until November 8, 1989, without being taken before a judicial officer or given an initial appearance as required by Rule 1.04 of the Uniform Criminal Rules of Circuit Court Practice.
On November 7, 1989, the test results were reported to the policeman. Coleman was apprised by them that "it didn't look too good right now, and would he like to get it off his chest?" The officers, after further interrogation, obtained an oral confession which was reduced to writing on November 8th. Coleman executed a form waiver of rights on both dates.
On November 29, 1989, Coleman was indicted for burglary, rape, kidnapping and recidivism.
An attorney was appointed to defend Coleman, who promptly filed a motion to suppress any confessions, statements and evidence obtained from his client by the law enforcement officers because they violated Rule 1.04 of the Uniform Criminal Rules of Circuit Court Practice. Several hearings were held before the trial judge on the motion. Relevant parts of the findings made by the trial court state as follows:
Now, here is what we find, and I think I should state my findings as of now, so that it doesn't get cold, and we have to go over it again.

I find that, obviously, there was no initial appearance. There was no reason that there should not have been. It would have been very convenient and very easy to have had an initial appearance, and it doesn't just apply to felonies. The rule reads "every person arrested." ...
I also find that the misdemeanor incarceration was, in reality, for the purpose of holding him for the other charge, because that's what the testimony is. .. .
I will say this. You put in jeopardy a very serious case when you hold someone without taking them to a Magistrate promptly. Also, you put doubt into a case when you basically hold someone on a misdemeanor charge, when you would not have held them were it not for the fact that you have an on-going felony charge....

I will also find as a fact there was no reason that law enforcement could not have taken this individual before a Magistrate the next day. ...
* * * * * *

It's a very close case, as far as I am concerned as to whether this statement *519 should be suppressed from the standpoint of the fact that the police had this individual at a place where a Magistrate was available for an initial appearance, not to be confused with the preliminary hearing, an initial appearance under the rule... .
At the initial appearance, the judicial officer is to ascertain the identity of the defendant, informing him of the charges, informing him of his right against self-incrimination and his right to counsel, his right not to be held incommunicado and his right to a preliminary hearing... .
Well, it's easy enough to say these same rights were given him by the police officers. I think there is a difference because of who gives it to the person, especially when that is available. (emphasis added).
The trial judge ultimately overruled the motion to suppress, holding that the illegal detention in violation of Rule 1.04 was not sufficient grounds for suppression of the confession.
Trial ensued, the confession was received in evidence over objection of Coleman, and the jury returned a verdict of guilty on all counts of the indictment except the recidivism charge which the State did not pursue. The trial judge sentenced Coleman to thirty (30) years for the rape conviction, fifteen (15) years for the burglary conviction, to run concurrently with the rape sentence, and twenty (20) years for the kidnapping conviction, to run consecutively to the rape and burglary sentences.
Coleman appeals.

II.
This Court finds dispositive Coleman's allegation of error regarding the violation of Rule 1.04. The evidence adduced during the hearing of the motion to suppress established:
(a) The officers possessed no evidence linking Coleman to the felony charges prior to his arrest on October 27, 1989;
(b) The driver of the vehicle occupied by Coleman immediately prior to his arrest was not stopped because of a law violation;
(c) The policemen had no probable cause to arrest Coleman prior to searching him;
(d) Coleman was charged with carrying a concealed weapon after a pocket knife was found on his person as a result of their search;
(e) Although Coleman was charged with carrying a concealed weapon, the real reason Coleman was held by the law enforcement officers was to allow for the completion of hair, saliva and blood tests, as well as interrogation;
(f) Coleman was held in the Morton jail from October 27th to November 8th, a total of at least twelve (12) days, without being taken before a judicial officer pursuant to Rule 1.04, although a judicial officer was available;
(g) The policemen interrogated and obtained an oral confession from Coleman on November 7th after telling him the test results "didn't look too good";
(h) The policemen took Coleman before a judicial officer after they obtained a written confession on November 8th.

A.
Rule 1.04 of the Uniform Criminal Rules of Circuit Court Practice provides:
Every arrested person shall be taken before a judicial officer without unnecessary delay.
Upon the defendant's initial appearance, the judicial officer shall ascertain the defendant's true name and address, and amend the formal charge if necessary to reflect this information. The defendant shall be informed of the charges against him and provided with a copy of the complaint. The judicial officer shall also advise the defendant of the following:
(1) That the defendant is not required to speak and that any statements he makes may be used against him;
(2) If the defendant is unrepresented, that he has the right to assistance of counsel, and that if he is unable to afford counsel, an attorney will be appointed to represent him;

*520 (3) That the defendant has the right to communicate with counsel, family or friends, and that reasonable means will be provided to enable him to do so.
The judicial officer shall inform the defendant of his right to a preliminary hearing, and a date for such hearing shall be set within a reasonable time.
In Nicholson v. State, 523 So.2d 68 (Miss. 1988), in a concurring opinion by Justice Robertson which was joined by four other justices, this Court gave meaning to Rule 1.04 in plain and sensible language:
As a matter of the law of this state, the right to counsel attaches once the accused is in custody (a fact generating the legal conclusion that the individual is under arrest) and all reasonable security measures (of evidence and persons) have been completed. At all critical stages thereafter, the accused is of right entitled to access to counsel, absent a specific knowing and intelligent waiver tied to that stage. These general premises, which I will explain below, derive from the most coherent and principled combined reading that may be given Miss. Const. Art. 3 § 26 (1890); Rules 1.02 through 1.05, Miss.Unif.Crim.R.Cir.Ct. Prac. (1979 as amended); Livingston v. State, 519 So.2d 1218, 1220 (Miss. 1988); Nixon v. State, 533 So.2d 1078 (Miss. 1987); Williamson v. State, 512 So.2d 868, 876 (Miss. 1987); Tolbert v. State, 511 So.2d 1368, 1375 n. 5 (Miss. 1987); Page v. State, 495 So.2d 436, 440 (Miss. 1986); and Cannaday v. State, 455 So.2d 713, 722 (Miss. 1984); cf. Miss. Code Ann. § 99-1-7 (1972).
* * * * * *
Once an individual has been functionally arrested, Rule 1.02 requires that he be promptly taken before a magistrate, at which time he must promptly be offered counsel. "Forthwith" is the word used in the rule. Rule 1.02 clearly contemplates a warrantless arrest and requires appearance before a neutral judicial officer "upon completion of the arrest." This requires interjection of a judicial officer at the point after which the accused has been taken to the police station and sufficient time afforded to complete the formal charging and booking procedures and reasonable security measures.
Rule 1.04 must be added to Rule 1.02 to further define the term "forthwith." Rule 1.04 requires that any arrested person be taken before a neutral judicial officer "without necessary delay." Read in complement the two rules explicate "forthwith" to mean "without unnecessary delay." When custody, booking, administrative and security needs have been met, there is but one possible excuse for delay: lack of access to a judge. In assuring this fact, principled policy demands that the judge be considered just as accessible for the defendant's initial appearance as for procuring a search warrant in a felony investigation. The valid (state law) rules in the field read together prohibit law enforcement from taking advantage of the unavailability of a judicial officer to procure evidence or unfair advantage which would likely become inaccessible after initial appearance. [emphasis added]
* * * * * *
A major purpose of Rules 1.02 and 1.04 is to secure the accused prompt ("forthwith", "without unnecessary delay") advice of his right to counsel by a judicial officer, one who has no professional duty nor personal inclination to try to exact from the accused a waiver of that right. Rule 1.05 directs that "counsel shall be appointed no later than the time of the initial appearance." This point in time is the "time the initial appearance under Rule 1.04 ... ought to have been held. ..." Page 495 So.2d at 439. [emphasis in original]
Once the right has attached, it is available to the accused "at every critical stage" thereafter. See Rule 1.05, Miss. Unif.Crim.R.Cir.Ct.Prac. (1979). A critical stage is one where a substantial right may be affected. Critical stage includes every confrontation between the accused and law enforcement carrying the possibility of ir-remedial prejudice to the accused.
*521 Nicholson, 523 So.2d at 76-77; e.g., Veal v. State, 585 So.2d 693, 699 (Miss. 1991); Willie v. State, 585 So.2d 660, 669 (Miss. 1991); Magee v. State, 542 So.2d 228, 233 (Miss. 1989); Jimpson v. State, 532 So.2d 985, 988 (Miss. 1988); May v. State, 524 So.2d 957, 967 (Miss. 1988).
The taking of blood, saliva, and hair samples from Coleman's body and his subsequent interrogation leading to a confession were "critical stages." A judicial officer was available for an initial appearance and one should have been held without unnecessary delay. Even the trial judge noted that "it would have been very convenient and very easy to have had an initial appearance... . There was no reason that law enforcement could not have taken the individual before a magistrate the next day."

B.
Also, elementary concepts of criminal practice and procedure dictate that here, Coleman could not have been arrested without probable cause. Yet, that is precisely what occurred. Under these circumstances, the arrest and ensuing search were illegal, and his subsequent detention on a concealed weapons charge was likewise illegal. Unbelievably, the officers admitted, and the trial court correctly found, that "the misdemeanor incarceration was, in reality, for the purpose of holding him for the other charge ..."
This Court is not unmindful that a confession given while in custody following an illegal arrest is not per se inadmissible. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and its progeny require further inquiry to determine whether the confession is voluntary, and if so, whether there are any significant intervening events which remove from the confession the primary taint of the illegal arrest. Henry v. State, 486 So.2d 1209 (Miss. 1986); Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982).
Assuming voluntariness, as this Court does here, we then consider (1) whether Miranda warnings were given and under what circumstances, (2) the temporal proximity of the arrest and confession, (3) the presence of intervening circumstances, (4) the purpose and flagrancy of the official misconduct, and (5) any other relevant facts. Henry, 486 So.2d at 1213; Hall v. State, 427 So.2d 957, 959-60 (Miss. 1983).
In this case, it becomes clear that as a result of the illegal arrest, and violation of Rule 1.04, the law enforcement officers obtained physical evidence from Coleman which in turn was used to coerce the confession. The only favorable fact to which the State may point is the giving of Miranda warnings, but alone, this is an insignificant event. Bolton v. State, 530 So.2d 1360, 1362 (Miss. 1988); Dycus v. State, 396 So.2d 23, 27 (Miss. 1981). The length of delay involved and the nature of the official misconduct overwhelmingly suggest inadmissibility of the confession.

III.
While a violation of Rule 1.04 will not automatically render a confession inadmissible, this Court is confronted here with other factors indicating that the delay in providing Coleman an initial appearance had a significant degree of purposefulness to it, and was directly and causally related to the confession obtained twelve days later. To uphold the admission of a confession and other evidence obtained after an unlawful misdemeanor arrest and search, which in actuality was made for the purpose of interrogating one for another felony crime, followed by twelve days of detention, physical testing and custodial interrogation in violation of required appearance rules formulated and approved by this court, would be a travesty of justice, as well as a gross reflection upon the judicial branch's inability to discharge its responsibilities. This Court cannot condone procedures of this type by law enforcement officers no matter how serious the crime under investigation. Unless rules are enforced, there are no rules. Box v. State, 437 So.2d 19, 21 (Miss. 1983); see also Vittitoe v. State, 556 So.2d 1062, 1065 (Miss. 1990) (rules of court "[are] valid rule[s] of law, emanating from a governmental source empowered to enforce [them]."
*522 The trial court erred in admitting the confession and any other evidence or statements obtained from Johnny Coleman as they were the product of his illegal arrest and the State's violation of Rule 1.04 of the Uniform Criminal Rules of Circuit Court Practice. This Court does not reverse this case without concern, but it is required by the positive law of this State to do so for violation of the requirement that a criminal defendant be taken for an initial appearance before a judicial officer without unnecessary delay. The convictions and sentences of Johnny Coleman for burglary, rape and kidnapping are therefore reversed, and this case remanded to the Circuit Court of Scott County for a new trial, or other proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN and BANKS JJ., concur.
McRAE, J., concurs in result only. ROY NOBLE LEE, C.J., not participating.