# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-00900-SCT

*DARRAL BELL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/18/2006 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | AMITE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHARLES E. MILLER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | RONNIE LEE HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED-07/19/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE SMITH, C.J., EASLEY AND DICKINSON, JJ.

### SMITH, CHIEF JUSTICE, FOR THE COURT:

¶1. This case comes to this Court on appeal from the Circuit Court of Amite County, by defendant Darral Bell. On March 9, 2005, Bell was indicted by an Amite County grand jury for the murder of LeCedric Hurst. On May 18, 2006, Bell was convicted of manslaughter and sentenced to a term of fifteen years with five years suspended in the Mississippi Department of Corrections. Bell subsequently filed a Motion for Judgment Notwithstanding the Verdict, which was denied. Bell then timely filed a Notice of Appeal to this Court.

¶2. Finding no errors by the trial court, we affirm.

FACTS

¶3.    On October 30, 2004, Bell and Hurst were involved in an altercation at the residence of Edna Spears, a relative of Hurst, with other witnesses present.  Bell testified that Hurst struck him with his hand, but Bell did not respond to this attack.   Bell left Spears's residence, driving a white F350 work truck, with one passenger, Kerwin Bland.  Hurst left Spears's residence driving a four-wheeler and traveled onto Perry Road.  The two vehicles were traveling in the same direction at the time of the collision.  Hurst was killed in the collision. Dr. Steven Hayne, who performed an autopsy on Hurst's body, testified that Hurst died of massive internal injuries, including lacerations to his liver and aorta.   The Amite County Sheriff's Office responded to the scene of the wreck. Officer Anthony Reeves made initial inquiries as to the events causing the wreck.

¶4.    Bell was arrested at 11:20 p.m. on October 30, 2004.  On March 9, 2005, Bell was indicted for the murder of Hurst.  An Amite County jury subsequently found Bell guilty of manslaughter and sentenced him to a term of fifteen years with five years suspended in the custody of the Mississippi Department of Corrections. The trial court denied Bell's motion for judgment notwithstanding the verdict (JNOV).  From that conviction and denial, Bell appeals to this Court, raising the following seven issues on appeal:

> I.    **Whether the evidence is insufficient to support conviction pursuant to the indictment and relevant law.  The lower court erred in not granting a judgment notwithstanding the verdict pursuant to Rule 50(B) of the Mississippi Rules of Civil Procedure.**
>
> II.   **Whether the lower court erred by not dismissing the indictment or granting mistrial when it allowed testimony of prior bad acts of the accused.**

**III.** Whether the lower court should have dismissed the case based on illegal arrest.

**IV.** Whether the lower court erred in its failure to dismiss the case based on discovery violations.

**V.** Whether Bell's Miranda rights were violated and the court erred in not suppressing any and all statements made by Bell.

**VI.** Whether the lower court erred in not dismissing the indictment for failure to comply with Rule 6.03.

**VII.** Whether the lower court erred in denying Bell's motion to dismiss on the basis of spoliation of evidence.

## DISCUSSION

### I. Sufficiency of the evidence

¶5. First, Bell asserts that insufficient evidence supported the verdict, and thus the trial court should have granted his motion for JNOV. Bell argues that the State's case rested entirely on the testimony of Kerwin Bland and other witnesses, which should have been suppressed based on the unreliability of these witnesses. Bell also argues that Bland gave no independent corroboration of the evidence. Further, Bell asserts that the trial court erred by not suppressing physical evidence such as the truck, the four-wheeler and photographs. The State counters that the record reflects that the evidence supporting Bell's conviction did not rely entirely upon Bland's testimony. Further, the State argues that Bland's testimony as to what he witnessed was not shown to be credible. Citing ***McClain v. State***, 625 So. 2d 774, 778 (Miss. 1993), the State asserts that the denial of Bell's motion for JNOV was proper because sufficient credible evidence supports the denial, including eyewitness testimony, voluntary inculpatory statements and statements against interest.

3

¶6. In reviewing a denial of a motion for a JNOV, this Court must consider all of the evidence in the light most favorable to the State. *McClain*, 625 So. 2d at 778 (*citing Esparaza v. State*, 595 So. 2d 418, 426 (Miss. 1992)); *Wetz v. State*, 503 So. 2d 803, 808 (Miss. 1987); *Harveston v. State*, 493 So. 2d 365, 370 (Miss. 1986). The credible evidence which is consistent with the guilt must be accepted as true. *Id.* (*citing Spikes v. State,* 302 So. 2d 250, 251 (Miss. 1974)). Matters regarding the weight and credibility of the evidence are to be resolved by the jury. *Id.* (citing *Neal v. State*, 451 So. 2d 743, 758 (Miss. 1984); *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980)). This Court will reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. *Id.* (*citing Wetz,* 503 So. 2d at 808; *Harveston,* 493 So. 2d at 370; *Fisher v. State*, 481 So. 2d 203, 212 (Miss. 1985)).

¶7. Kerwin Bland, the son of Edna Spears, was present at Spears's house on the night that the wreck occurred. Kerwin left the house with Bell following the argument between Bell and Hurst. Kerwin was riding in the truck with Bell when the wreck occurred. At trial, Kerwin testified that Hurst came up behind the truck and when Hurst got ready to pass the truck, Bell "cut over" on him. Kerwin testified that he could hear and see Hurst's four-wheeler when it was beside the truck. He also testified that Bell looked back through the window toward the four-wheeler before cutting over on Hurst. Kerwin testified that after the truck hit the four wheeler, the truck continued to the left and between two trees in a nearby yard. Damage to the driver's side of the truck is shown in the photographs, which were admitted into evidence. Kerwin also testified that after the wreck occurred, Bell told

4

him not to say anything. Despite Bell's argument that the evidence should be suppressed based on the lack of reliability of Kerwin's testimony, a review of the record shows Bell offered no evidence to prove that this witness was unreliable. Furthermore, the question of credibility of the evidence is not for this Court to decide, but is to be determined by the jury. *McClain*, 625 So. 2d at 778.

¶8. Tannie Bland, Spears's nephew, also testified that he was present at Spears's home on the night of the incident. Tannie witnessed the altercation between Hurst and Bell. Tannie testified that he was standing in the driveway when Bell lowered the truck window and said "bring your bad a** up the road, I got something for you." Melvin Bland, Spears's brother, was also present at Spears's home that night. Melvin testified to hearing Bell yell at Hurst from his truck that he "had something for him if he come up the road." Melvin, who witnessed the accident from the front porch of Spears's home, testified that Hurst got ready to pass Bell when the truck cut over on him. Melvin testified that he could see Perry Road from the porch because it was at the top of the hill from the house. After the collision, Melvin saw Bell's truck go to the left into a nearby yard. However, Melvin testified that the truck then went out of his sight because a large house blocked his view.

¶9. Officer Reeves, who responded to the scene of the wreck, testified that Bell initially told him that Hurst must have hit a tree. However, Reeves testified that Bell showed him the truck and then told him a second time how the wreck happened. This time, Bell stated that Hurst lost control of the four-wheeler when he went to pass him and that his four-wheeler went into the mirror and the front side fender of the truck.

¶10.    Additionally, Lieutenant Gerald Wall testified that he interviewed Bell on November 1, 2004. Wall testified that Bell received his *Miranda* rights and gave a signed a waiver of those rights at 4:50 p.m. that day. Wall then took Bell's statement, which was handwritten and signed by Bell. In the statement, Bell admitted that he and Hurst had an argument at Spears's home. Bell subsequently left the home in the work truck. Bell stated that in order to stop Hurst from getting home, he drove in the middle of the road to prevent Hurst from passing him. Bell stated that he would get over when Hurst tried to pass, until the last time when he turned the wheel too far and lost control of the truck, causing Hurst to hit the front wheel of the truck. Wall read this statement at trial.

¶11.    Dr. Hayne, who performed an autopsy on Hurst, testified that Hurst died as a result of massive internal injuries. Dr. Hayne testified that Hurst's injuries would be consistent with injuries resulting from a truck and four-wheeler crash where the truck ran over the decedent. Officer Cecilia Kazery, an accident reconstructionist and rebuttal witness for the prosecution, testified that she reviewed the reports, Bell's statement, and the photographs in evidence in addition to personally observing the truck and scene of the wreck. From this evidence, Kazery opined that Hurst was run over by Bell while traveling beside him or attempting to pass the truck. Based on her examination of the photographs and scene of the wreck, Kazery testified that Bell's truck went through two trees in a nearby yard after colliding with Hurst's four-wheeler, which supports the other witnesses' testimony of how the wreck occurred.

¶12.    Based on the evidence introduced at trial, we find sufficient evidence in support of the verdict. Therefore, the trial court did not err in denying Bell's motion for JNOV.

## II. Prior bad acts

¶13. Next, Bell argues that the State improperly elicited testimony from officers that Bell committed a crime by driving in the middle of the road. Bell argues that this testimony violates 404(b) of the Mississippi Rules of Evidence, which prohibits the admission of evidence of other crimes or bad acts to prove the character of a person in order to show that he acted in conformity therewith. Essentially, Bell asserts that the trial court erred by admitting evidence that he was illegally driving in the middle of the road, a charge for which Bell was not indicted. The State argues that this evidence was properly admitted as it was introduced through Bell's own statements to investigators after he was given a **Miranda** warning and signed a waiver of his rights.

¶14. The admissibility of evidence rests within the trial court's discretion. **Hall v. State**, 611 So. 2d 915, 918 (Miss. 1992) (*citing* **Wade v. State**, 583 So. 2d 965, 967 (Miss. 1991)). This Court will reverse the ruling of a trial court only where such discretion has been abused and a substantial right of a party has been affected. **Johnson v. State**, 666 So. 2d 499, 503 (Miss. 1995)(*citing* M.R.E. 103(a)).

¶15. This evidence was part of Bell's voluntary statement to the investigators that he drove in the middle of the road to prevent Hurst from passing him. At trial, Lieutenant Wall read the statement during his testimony with *no objection* from the defense. Specifically, Bell wrote that "[i]n order for me to stop him from getting home, I drove in the middle of the road to stop him from passing me." His statement was then published to the jury *without objection* from the defense. On redirect examination, the prosecution questioned Wall as to whether Bell's driving in the middle of the road and attempting to keep the victim from

7

passing his vehicle were against the law. The defense objected to the question. After the trial court held a bench conference out of the hearing of the jury, the trial court sustained the objection and excused the jury. At this time, the defense moved for a mistrial based on the admission of the "prior bad act" of Bell. After hearing arguments from both sides, the trial court stated that, while it sustained the objection to the testimony that prosecution sought to elicit, the prosecution was not attempting to admit a prior bad act because the actions in question happened at the time of the alleged crime. When the jury was brought back into the courtroom, the trial judge advised the jury to disregard any response to this line of questioning. Later in the trial, during the testimony of Officer Kazery, the trial court again sustained an objection to the question of whether it is unlawful to drive in the middle of the road.

¶16.   This Court held in **Ballenger v. State**, 667 So. 2d 1242, 1257 (Miss. 1995) that evidence of other crimes or bad acts is admissible to tell the complete story so as not to confuse the jury. In **Brown v. State**, 483 So. 2d 328 (Miss. 1986), the Court stated that the State has a "legitimate interest in telling a rational and coherent story of what happened . . . ." **Id.** at 330.   Further, where it is substantially necessary to present to the jury "the complete story of the crime," evidence or testimony may be given, even though it may reveal or suggest other crimes. **Id.**  This Court also stated, in **Duplantis v. State**, 644 So. 2d 1235, 1246 (Miss. 1994),  that where another crime or act is "so interrelated [to the charged crime] as to constitute  a single transaction or occurrence or a closely related series of transactions or occurrences," proof of the other crime or act is admissible. **Id.**

8

¶17. We find that Bell's voluntary statement that he was driving in the middle of the road was part of "the story of the crime," explaining the events resulting in the death of Hurst. Furthermore, we find this act was admissible as it is so interrelated with the charge against Bell that it constitutes a closely related series of occurrences. Therefore, we find that the trial court did not abuse its discretion in admitting Bell's statement that he drove in the middle of the road. However, it was error for the prosecution to elicit testimony from Officer Kazery that Bell committed a crime by driving in the middle of the road. This error was certainly avoidable as the trial court had previously sustained an objection to similar testimony by Lieutenant Wall. The trial court cured the first error by advising the jury to disregard the testimony concerning whether it is unlawful to drive in the middle of the road. The trial court further advised the jury that any time an objection is sustained, the jury should not consider or speculate about what the answer would have been or anything of that nature. Additionally, the trial court properly sustained the objection to the prosecution's subsequent attempt to elicit this testimony from Officer Kazery. Hence, we find that because of the trial court's rulings and curative instruction, the error was harmless. Therefore, this issue is without merit.

### III. Arrest

¶18. Bell argues that he was arrested, held and questioned without probable cause. The State counters that the testimony of the investigating officer sufficiently shows probable cause to justify Bell's arrest under the totality of the circumstances test. Officer Reeves observed the wreck scene involving the four-wheeler and the truck. The State argues that

Officer Reeves, who questioned the parties and observed the body of Hurst at the scene, had probable cause for Bell's arrest.

¶19.    In defining probable cause in warrantless arrests, this Court stated that "[t]he officer involved is charged to make a practical, commonsense decision whether, given the totality of the circumstances, there is a fair probability that the person proposed to be arrested or searched is involved in substantial criminal activity." *Alexander v. State*, 503 So. 2d 235, 239 (Miss. 1987).  Officer Reeves testified that after arriving at the scene of the wreck, he was informed that Bell was the driver of the truck.   Once Reeves approached Bell, he was able to determine that he had been drinking by the smell of alcohol on his breath.    Reeves testified that he then asked Bell whether he had been drinking, and Bell responded that he had consumed three or four beers.  Reeves confirmed that Bell was the driver of the truck, at which point he considered Bell a suspect.  Further, Reeves's report states that he arrested Bell at 11:20 p.m. on October 30, after ascertaining that Bell was the driver of the truck and had been drinking.

¶20.    Based on Reeves's observation of Bell at the scene and his confirmation from Bell that he had been drinking and was the driver of the second vehicle in the accident, we find that there was probable cause for Bell's arrest.  Therefore, this issue is without merit.

**IV.    Discovery violations**

¶21.    Bell asserts that the district attorney committed a discovery violation by submitting the State expert's report as to the examination of the truck and crime scene on the first day of the trial.  Citing *West v. State*, 553 So. 2d 8, 17-20 (Miss. 1989), Bell argues that the failure of the prosecutor to provide notice of expert testimony before trial was a clear

violation of discovery rules and sufficient grounds for dismissal. The State argues that the prosecution stated for the record that it was not calling an accident reconstructionist in its case-in-chief, but would use an accident expert if Bell used one in his defense. The State argues that the record reflects that the defense did not supply the prosecution with the detailed report of its proposed expert, James Hannah, until the day of trial. The State also argues that Officer Kazery, an accident reconstructionist, testified for the prosecution only in rebuttal. The State further asserts that any delay in receiving Kazery's report can be attributed to the defense, since it failed to provide Kazery with a copy of Hannah's report.

¶22. Based on the procedure first outlined in *Box v. State*, 437 So. 2d 19, 23-24 (Miss. 1983), when a trial court is faced with previously undisclosed evidence to which the defendant has objected, it should give the defendant a reasonable opportunity to familiarize himself with the evidence. *Duplantis*, 644 So. 2d at 1249-1250. If the defendant thereafter believes he may be prejudiced by the admission of the evidence because of his lack of opportunity to prepare to meet it, he must request a continuance. *Id.* A motion for mistrial will also suffice "as a request for a continuance." *Id.* n. 13 (*citing West*, 553 So. 2d at 18 n.6). However, if the defendant fails to request a continuance, he waives the issue. *Id.* Following such a request, the State may opt to proceed without the undisclosed evidence, or the trial court must grant the continuance. Furthermore, failure to follow the *Box* guidelines is prejudicial error, requiring reversal and remand. *Id*. at 1250 (*citing Darghty v. State*, 530 So. 2d 27, 33 (Miss. 1988)).

¶23. During pre-trial motions, the defense requested that the State disclose any impeaching information that it may have obtained through its accident reconstructionist, Kazery. The

11

prosecution responded that it had not received any reports from her at that time, as it was waiting on the report from the defense's accident reconstructionist. The prosecution informed the trial court hat it had not consulted an accident reconstructionist to call in its case-in-chief, and that it would put on Kazery only to provide rebuttal testimony to the defense's expert testimony. The trial court then directed the prosecution to provide the defense with an idea of what Kazery's testimony would include *after* she had a chance to review their expert's report. At trial, following the testimony of Hannah, the defense rested and the prosecution then called Kazery as a rebuttal witness. The defense did *not* object or request a continuance before she testified. The record reflects that Kazery submitted her report shortly after receiving Hannah's report. Kazery testified that she received Hannah's report on the Friday before trial and faxed her report to the defense on the following Monday morning. While Bell relies on *West* to support his position that the prosecution violated the discovery rules by failing to provide notice of Kazery's report until the start of trial, the defense had notice of the prosecution's rebuttal expert. The defense also was aware that Kazery would not provide her report to be used in rebuttal until she had reviewed Hannah's report, all of which is evidenced by the pre-trial hearing held on May 2. Furthermore, the failure of the defense to object to this testimony or request a continuance waived this issue.

### V. Miranda rights

¶24. Next, Bell asserts that his Miranda rights were violated. Bell asserts that Lieutenant Wall did not inform him of any charges against him prior to his giving any statements. Further, Bell asserts that he was held in jail from October 30 until November 3 without counsel and without being informed that he was charged with any crime. Citing *Coulter v.*

12

*State*, 506 So. 2d 282 (Miss. 1987), Bell asserts that the State failed to prove voluntariness of his statements beyond a reasonable doubt. Bell argues that his statement was not voluntarily given and was a result of coercion by the sheriff's department, and thus the case against him should be dismissed. The State counters that Bell's statements were voluntarily given to Lieutenant Wall after Bell signed a Miranda waiver. The State also argues that Bell made oral statements to Officer Reeves at the scene that Hurst lost control of the four-wheeler, causing the accident. The State submits that these initial statements were non-custodial as they were in response to preliminary questions asked to assist in the investigation of a death at the scene of a wreck. The State further asserts that the trial court properly found no due process violation when Bell made his written statement to Lieutenant Wall.

¶25.    This Court has held that to be subject to custodial interrogation, one must be both in custody and undergoing interrogation. A subject is in custody when his right to leave freely has been restricted. *Roberts v. State*, 301 So. 2d 859, 861 (Miss. 1974). The accused is subject to interrogation when he is questioned by the police or the functional equivalent. *Wilson v. State*, 936 So. 2d 357, 362 (Miss. 2006) (*citing Pierre v. State*, 607 So. 2d 43, 52 (Miss. 1992).

¶26.    The State has the burden of proving the voluntariness of a confession. *Agee v. State*, 185 So. 2d 671, 673 (Miss. 1966). This burden is met by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward. *Morgan v. State*, 681 So. 2d 82, 89 (Miss. 1996) (*citing Agee,* 185 So. 2d at 673). This creates a prima facie case for the State on the question of voluntariness. *Id*. When objection is made to the introduction of the confession, the accused

is entitled to a preliminary hearing on the question of the admissibility of the confession, which is conducted in the absence of the jury. *Id*. After the State has made out a prima facie case as to the voluntariness of the confession, if "the accused offers testimony that violence, threats of violence, or offers of reward induced the confession, then the State must offer all the officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of any such witness." *Id. (citing Lee v. State,* 236 Miss. 716, 112 So. 2d 254 (1959)). We also have held that "the resolution of conflicting testimony regarding voluntariness is a question of fact to be resolved by the trial judge at the suppression hearing." *Id. (quoting Chase v. State*, 645 So. 2d 829, 841 (Miss. 1994)); *see also Veal v. State*, 585 So. 2d 693, 697 (Miss. 1991) (this Court will not reverse trial court on conflicting testimony as to whether coercion used to obtain confession).

¶27. The trial court held a preliminary hearing on May 2 on Bell's motion to suppress his statements to the investigators. After hearing testimony from Officer Reeves, Sergeant John Stoll and Lieutenant Wall, who were present when Bell made the statements in question, it denied the motion to suppress. As to the oral statement made to Officer Reeves, the trial court denied suppression, as there was no evidence that Bell was in any type of custodial interrogation or being held at the time when Officer Reeves was making the initial inquiry as to what happened. The trial court found that the written statement was given after Bell was fully advised of his *Miranda* rights and voluntarily waived those rights. Therefore, we find Bell's right to a preliminary hearing on the question of the admissibility of the confession was fully satisfied.

¶28. At trial, Lieutenant Wall testified that Bell signed a statement acknowledging his *Miranda* rights as well as a waiver of those rights at 4:50 p.m. on November 1, 2004, prior to writing his voluntary statement at 5:30 p.m., which also is documented by State's Exhibits 29 and 30. Based on this testimony, we find that the State made out its prima facie case on the question of voluntariness. However, Bell testified that he was forced to give his confession to the officers. Therefore, based on Bell's testimony, the State was then required to offer as witnesses all the officers who were present when the accused was questioned and when the confession was signed. *Morgan*, 681 So. 2d at 89. The State offered all the officers who were involved in the questioning of Bell. The testimony of Lieutenant Wall and Officer Stoll, who conducted the interview, Chief Deputy Tim Wroten and Sheriff Perkins, who did not participate in the interview but were in and out of the interview room, fails to suggest that any threats or violence were used in obtaining Bell's voluntary statement. Therefore, we find that the State met its burden of proving the voluntariness of Bell's confession. As the record supports the trial court's admission of Bell's statements, we find this issue lacks merit.

### VI. Initial Appearance

¶29. Bell argues that he was improperly held in jail for more than forty-eight hours without the benefit of an appearance, in which time he was questioned and forced to give a statement without the benefit of an attorney. Bell cites **Abram v. State**, 606 So. 2d 1015, 1029 (Miss. 1992) for support. The State asserts that the record reflects that Bell's non-custodial oral statement was given on October 30, 2004, and his post-Miranda statement was given within two days of the wreck and death of Hurst, on November 1, 2004. Further, Lieutenant Wall

15

testified that when he and Officer Stoll introduced themselves to Bell before the interview, they explained to Bell that they were there to talk to him about being in jail for murder. The State also argues that there is no evidence of coercion or suggestions being made to Bell prior to his statements or unnecessary delay in bringing Bell before a magistrate.

¶30. Rule 6.03 of the Uniform Rules of Circuit and County Court provides that "[e]very person in custody shall be taken, without unnecessary delay and within forty-eight hours of arrest, before a judicial officer or other person authorized by statute for an initial appearance." Bell was arrested on October 30, 2004, and was given an initial appearance on November 3, a period exceeding the time frame in Rule 6.03. However, despite Bell's allegation that he was held in jail for three days without being informed of the charges against him, the record shows that Bell was arrested at 11:20 p.m. on October 30, was interviewed November 1 at 4:50 p.m., and gave his voluntary statement at 5:30 p.m., after signing a waiver of his *Miranda* rights, a period clearly within forty-eight hours.

¶31. Bell relies on *Abram*, where this Court found reversible error in part due to failure to provide an initial appearance according to Rule 6.03. However, in *Abram*, this Court found that the confession was coerced, and that the State would not have obtained the uncounseled confession if the defendant had been provided a timely initial appearance and access to counsel. *Abram*, 606 So. 2d at 1029. This Court held that where the defendant's conviction relied solely upon his confession, it was reversible error for the State to fail to provide an initial appearance when a judge was available at all times. *Id.* In contrast to *Abram*, Bell's conviction did not rely solely upon his confession. *See supra* Issue I.

16

¶32.    In ***Jones v. State***, this Court went through a detailed analysis of whether the failure to provide a defendant with an initial appearance within forty-eight hours was prejudicial to the defendant.  841 So. 2d 115, 131-134 (Miss. 2003). It is well-established that the failure to provide an initial appearance for an accused within the time provided is not, in itself, a reason to suppress a confession. ***Id***.(*citing **Davis v. State***, 743 So. 2d 326, 337 (Miss. 1999)). In ***Morgan v. State***, 681 So. 2d 82 (Miss. 1996) and ***Veal v. State***, 585 So. 2d 693 (Miss. 1991), this Court found that a violation of Rule 6.03 alone will not result in the suppression of evidence or reversible error where the defendant was informed of his rights and made a knowing and voluntary waiver. ***Jones,*** 841 So. 2d at 132.

¶33.    Furthermore, in ***Lawrence v. State***, 869 So. 2d 353, 354 (Miss. 2003), this Court found that although Rule 6.03 was violated, there was no Fourth Amendment violation for failure to give the defendant an initial appearance until six days after his arrest.  In this case, as in the case at hand, the defendant was given his ***Miranda*** rights and waived his  right to an attorney prior to his confession. ***Id***.  This Court stated that it is clear from ***Gerstein v. Pugh***, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975), that "the States certainly have the right to enact rules and procedures to afford more rights than constitutionally required to those citizens who are criminally charged.  However, when, as here, such a rule is enacted, and then violated, that rule violation does not necessarily rise to the level of a constitutional violation." ***Lawrence***, 869 So. 2d at 356. Mississippi has adopted a procedure for a fair and reliable determination of probable cause by a judicial officer promptly after arrest via Rule 6.03. ***Id.*** (*see also **County of Riverside v. McLaughlin***, 500 U.S. 44, 53-55, 111 S. Ct. 1661, 1668-69, 114 L. Ed. 2d 49 (1991)).  This Court held that "[i]f the procedure of Rule 6.03 is

followed, the Fourth Amendment rights of the accused are protected; however, the converse does not necessarily follow – failure to follow the exact procedure of Rule 6.03 does not necessarily result in a Fourth Amendment violation." ***Id.***

¶34. As discussed in Issue V, the trial judge found that Bell's statements were admissible because Bell had been advised of his right to counsel and he knowingly, intelligently and voluntarily waived this right before making his voluntary statement on November 1. We uphold the trial court's decision, as we find no evidence of coercion and find that Bell's written statement was voluntarily given within forty-eight hours of his arrest. Therefore, this issue is without merit.

### VII. Spoliation of the evidence

¶35. Finally, Bell argues that the destruction of the rearview side mirror of the truck violated his due process rights. Bell argues that the sheriff's department did not examine the truck or four-wheeler. The Amite County Sheriff's Department stored the truck for approximately three to four days, photographed it, then released it to the owner, Chad Stutzman. On April 10, 2006, the trial court held a motion hearing on this matter. At this hearing, the prosecution stated that the truck was owned by Stutzman, Hurst's employer, and that it was used daily in Stutzman's business. The prosecution informed the trial court that it had contacted Stutzman and informed him that the defense's expert wished to examine the truck. The prosecution also informed the defense that the truck was located on the premises of the owner for its inspection; however, the defense had done so at that time. The prosecution pointed out that Stutzman had replaced the broken mirror, therefore the original mirror was not available for viewing.

18

¶36. After hearing both sides' arguments, the trial court instructed the prosecution to ensure that the truck was produced for inspection and that all information concerning the broken mirror was available to the defense. The record reveals that Stutzman put the truck back to work after it was released. He had the broken mirror replaced, and the remnants were discarded by his crew. Stutzman could not account for the remnants, as they were discarded in the woods where his crew was working. Since that time, the owner of the property has cleared and burned off the property.

¶37. The State argues that, although Hannah testified that he thought having the broken mirror would have helped his accident scene investigation, there was no statement in the record showing how this would have helped Bell's defense. Relying on *Mason v. State*, 440 So. 2d 318, 319 (Miss. 1983), the State argues that facts which are not supported by the record should be ignored on appeal. As such, the State argues that there is no evidence that the broken mirror was exculpatory, or that the prosecution had anything to do with its not being available for inspection or testing.

¶38. In *Murray v. State*, we clarified three requirements to find a due process violation by the State in a preservation of evidence case: (1) the evidence in question must possess an exculpatory value that was apparent before the evidence was destroyed; (2) the evidence must be such that the defendant would be unable to obtain comparable evidence by other reasonably available means; and (3) the prosecution's destruction of the evidence must have been in bad faith. *Murray v. State*, 849 So. 2d 1281, 1286 (Miss. 2003) (*citing State v. McGrone*, 798 So. 2d 519, 523 (Miss. 2001).

19

¶39.   Although both sides and their experts disagree as to the exculpatory value of the mirror, there is no need to inquire into the mirror's exculpatory value for the purpose of determining whether a due process violation occurred, because Bell fails to meet the last two prongs of the test.  First, the State photographed the broken side mirror from two different angles. These photographs were admitted into evidence.  Hannah testified that it would have been important to have seen the actual, damaged mirror because it is hard to tell depth perception through the pictures.  However, Hannah went on to admit that photographs as well as physical evidence are both reliable sources of information, and he has been trained to use both.  It should also be noted that the wreck occurred on October 30, 2004; however, Hannah did not receive any information concerning this case until July 2005, several months after Stutzman had repaired the mirror and returned the truck to use.

¶40.   With regard to the last prong, bad faith is defined as "not simply bad judgment or negligence, but rather . . . conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will." *Murray*, 849 So. 2d at 1286 (*citing* Black's Law Dictionary 139 (6th ed. 1990)).  In *Tolbert v. State*, this Court also stated that an inference that the evidence was favorable to the defense exists only "where the spoliation or destruction was intentional and indicates fraud and a desire to suppress the truth." *Tolbert v. State*, 511 So. 2d 1368, 1372 (Miss. 1987) (*quoting Washington v. State*, 478 So. 2d 1028, 1032-33 (Miss. 1985)).  There is no evidence that the prosecution intentionally caused the destruction of the mirror or caused it to be unavailable.  Neither the prosecution nor the defense was able to use the mirror in the preparation of its case.

20

¶41. The record shows that the defense did not ask to see the truck until November of 2005. The State contacted Stutzman to get permission for the defense to see the truck, to which he agreed. Stutzman used this truck in his business during the week, but the truck was readily available for viewing on the weekends. The trial court found that the truck was released to its private owner several days after the wreck and that the damage to the truck was well documented by the numerous photographs in evidence. For these reasons, the trial court denied Bell's motion to dismiss, finding no willful destruction of the evidence. We find that the trial court did not err in its decision to deny Bell's motion to dismiss.

## CONCLUSION

¶42. Based on the foregoing reasons, we affirm the judgment of the Circuit Court of Amite County.

¶43. **CONVICTION OF MANSLAUGHTER AND SENTENCE OF FIFTEEN (15) YEARS WITH TEN (10) YEARS TO SERVE AND THE REMAINING FIVE (5) YEARS TO BE SERVED ON POST-RELEASE SUPERVISION FOR A PERIOD OF FIVE (5) YEARS UNDER THE SUPERVISION OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED.**

**WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.**