# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01150-COA

**RYAN P. CATLEDGE A/K/A RYAN PAUL CATLEDGE A/K/A RYAN CATLEDGE**                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/2013 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL D. GOGGANS |
| | JOHN DICKSON MAYO |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MELANIE DOTSON THOMAS |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF STATUTORY RAPE AND SENTENCED TO TWENTY YEARS, WITH TWELVE YEARS TO SERVE, EIGHT YEARS SUSPENDED FOR A PERIOD OF FIVE YEARS, AND FIVE YEARS OF SUPERVISED PROBATION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED: 03/24/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ROBERTS AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Ryan Catledge was convicted of the statutory rape of "Samantha," who was eleven

or twelve years of age at the relevant time.[1]  Catledge, who was twenty years old, was regarded as the victim's stepbrother, though their parents were not actually married.  He appeals his conviction, contending that the circuit court erroneously failed to suppress his confession.  Catledge also challenges the circuit court's ruling on an evidentiary issue.  We find that the circuit court acted within its discretion in both instances, and so we affirm.

## DISCUSSION

### 1. Admissibility of Confession

¶2.     We can reverse a trial court's denial of a motion to suppress only "if the incorrect legal principle was applied; if there was no substantial evidence to support a voluntary, knowing, and intelligent waiver of *Miranda* rights; and if the denial was a result of manifest error."  *Scott v. State*, 8 So. 3d 855, 861 (¶22) (Miss. 2008).  "The burden lies with the State to prove that a confession is voluntary."  *Id.* at (¶24).  "[T]he burden is met by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward.  This makes out a prima facie case for the State on the question of voluntariness."  *Id.* (citation and quotation marks omitted).  "The trial judge must determine beyond a reasonable doubt that a confession was voluntary and knowing and that the defendant was given his *Miranda* rights prior to any custodial interrogation."  *Id.* at (¶23).

---

[1] This Court uses pseudonyms to protect the identity of minors who are victims of sexual abuse.

¶3. Catledge executed a written waiver of his *Miranda* rights and hand-wrote the following confession (with minor corrections to spelling and punctuation):

> October 2011 15. I was drunk and high. I didn't know better. I made a mistake by having sex with my stepsister. I know it was wrong. I'm willing to do anything in my power to change my life and start over with a new life. I was sleeping on the air mattress with [Samantha] that night. When we had sex, I asked [Samantha] if it was okay, and she said yes.

The statement was initialed and signed by Catledge.

¶4. Catledge makes a four-pronged attack on this confession. He alleges that it was a product of an illegal arrest, that he was detained for much too long without being afforded a preliminary hearing, that the authorities denied him access to an attorney retained by his family, and that the confession was generally coerced for a variety of reasons.

¶5. Margie Bell, an investigator for the Winston County Sheriff's Department, testified that Samantha had told a friend that Catledge had been having sex with her, and that the allegations had made their way to the authorities. Deputy Bell went to the home where Samantha lived with her grandmother, her mother, Catledge's father, a cousin, and Catledge.[2] Bell testified that she spoke to Samantha's mother outside the home, and she acknowledged that the allegations had been made. Then, to Deputy Bell's surprise, Catledge emerged from the house (she believed he no longer resided there). Bell was concerned that the victim was in further danger, so she took Catledge to the county jail for an "investigative hold," which she testified that department policy allowed her to do for a period of seventy-two hours. Bell

---

[2] Whether Catledge continued to reside at this home by this date is disputed.

then returned to the house and resumed her investigation.

¶6.     Bell had no warrant to arrest Catledge, and it is not clear from her testimony whether, at that time, she had probable cause to do so. Consequently, the State does not defend Catledge's detention as a legal arrest. As the trial court correctly noted, however, the fact that Catledge's detention may have initially been unsupported by probable cause does not necessarily require his statement to be suppressed. The Mississippi Supreme Court addressed this issue in *Hall v. State*, 427 So. 2d 957, 959-60 (Miss. 1983) (some citations omitted):

> *Brown v. Illinois*, 422 U.S. 590[] (1975) charts our course in this case. In *Brown*, the defendant had been arrested without probable cause and without a warrant in violation of rights secured to him under the Fourth and Fourteenth Amendments to the Constitution of the United States. Under the facts, the first statement was given within two hours of the arrest, although prior to each statement *Miranda*-sufficient warnings were given. The issue, of course, was whether the confessions were "the fruit of the poisonous tree," and, thus, inadmissible. *See Wong Sun v. United States*, 371 U.S. 471[] (1963).
>
> *Brown* rejects absolutism in both directions. On the one hand, the mere fact that an accused is given full advice regarding his rights, as required by *Miranda*, cannot in every case render the confession admissible. In the words of *Brown*,
>
> > the *Miranda* warnings, *alone* and per se, cannot always make the act sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and confession. 422 U.S. at 603[].
>
> On the other hand, *Brown* rejected the "but for" rule. The mere fact that a defendant confesses while in custody following an illegal arrest does not per se render the confession inadmissible. Rather, *Brown* holds that
>
> > the question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive. 422 U.S. at 603[].

*Brown* then goes on to set forth the factors that ought to be considered by the trial court when faced with such a situation. First, *Brown* recognizes that

> the Miranda warnings are an important factor to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. 422 U.S. at 603[].

Other *Brown* factors which ought to be considered are

> (1) the temporal proximity of the arrest and the confession;
>
> (2) the presence of intervening circumstances;
>
> (3) the purpose and flagrancy of the official misconduct, i.e., the making of the illegal arrest; and
>
> (4) any other circumstances that seem relevant.

¶7.    We agree with the trial judge that these factors do not support suppressing the confession. A large amount of time – more than four days – passed between Catledge's initial detention and his interrogation, during which time Catledge, although held in the county jail, could communicate with the outside world.[3] The extended detention cuts both ways, however, as it was in violation of Rule 6.03 of the Uniform Rules of Circuit and County Court Practice, which requires the initial appearance to occur within 48 hours. But violation of Rule 6.03 also does not necessarily require suppression of a confession, even when the confession occurs outside of the 48-hour period; instead, "[i]t is well-established that the failure to provide an initial appearance for an accused within the time provided is

---

[3] Catledge subsequently claimed that the phones at the jail, although available to him, did not work; but this testimony was not put before the trial judge at the suppression hearing.

5

not, in itself, a reason to suppress a confession." *Bell v. State*, 963 So. 2d 1124, 1135-36 (¶32) (Miss. 2007). "[A] violation of Rule 6.03 alone will not result in the suppression of evidence or reversible error where the defendant was informed of his rights and made a knowing and voluntary waiver." *Id.* at 1136 (¶32).

¶8.     Catledge also makes various contentions relating to his mother's testimony about her efforts to secure representation for Catledge. She alleged that she consulted with an attorney, James Mayo, who agreed to represent Catledge. Mayo called the sheriff's department a few hours before Catledge's interrogation, but he was unable to get in touch with Catledge or the investigators working on the case. Catledge insinuates misconduct on behalf of the sheriff's department, but he does not substantiate his claim that this resulted in an infringement on his right to counsel. He also made various allegations about the interrogation when he testified in his own defense, but this testimony was not presented at the suppression hearing and will not be considered in determining whether the trial court was correct in its ruling. *See Merritt v. State*, 127 So. 3d 1150, 1154 n.2 (Miss. Ct. App. 2013).

¶9.     Catledge argues that his illegal arrest and extended detention require suppression of his confession. He cites *Coleman v. State*, 592 So. 2d 517 (Miss. 1991), a case where the confession was suppressed, but the facts of *Coleman* are far more severe. Coleman was illegally arrested and illegally searched for the purpose of obtaining hair, saliva, and blood samples. He was then illegally detained for twelve day to prevent him from getting an attorney before the samples were tested. Finally, the police used the ill-gotten test results to

6

convince Coleman to confess. *See id.* at 518. In today's case, it is true that the authorities continued to gather evidence against Catledge after his arrest, but the evidence did not stem from the illegal arrest. Likewise, the investigators admitted that they intended to speak with Catledge before his initial appearance (because he would not have a lawyer), but this was not the reason for the delay, nor was Catledge's detention extended for some other tactical advantage. Instead, it seems to have resulted from a misunderstanding of the law and from the coincidence that much of Catledge's time in the jail occurred over a weekend, which the investigators believed did not "count" toward the time allowed. By all indications, if the authorities had recognized the 48-hour rule, they would have interrogated Catledge sooner and obtained the same result.

¶10. Catledge executed a written *Miranda* waiver before the interrogation began. There also appears to be no doubt that, at the latest, the authorities had probable cause to have made a legal arrest a short time after Catledge was detained and that the probable cause did not stem from the detention itself. Nor was the confession obtained "by exploitation of the illegal detention." *See Jones v. State*, 330 So. 2d 597, 600 (Miss. 1976). Finally, we note that Deputy Bell testified that she removed Catledge from the scene to protect the victim. She did not attempt to interrogate Catledge at that time or otherwise exploit his illegal arrest to gather evidence. We do not consider Deputy Bell's purpose exploitive or her conduct particularly flagrant. All of the applicable *Brown* factors support admitting the confession, and so we conclude that the trial court did not abuse its discretion in denying the motion to

7

suppress.

## 2. Cross-Examination of Investigator

¶11.    Next, Catledge contends that the trial court erred by granting a prosecution motion in limine that precluded him from cross-examining Deputy Bell about an "incident" relating to her "improper use" of a fuel card that had allegedly led to the end of her employment with the sheriff's department.  Bell had not been charged with a crime in connection with the incident, of which there is no elaboration in the record beyond defense counsel characterizing it as "stealing" from the county.  The trial court indicated that it was inclined to grant the motion and asked defense counsel whether he could "cite . . . some evidentiary rule that would allow [the cross-examination]."  Defense counsel then changed subjects without further argument on the motion, and without elaborating on the details of the incident or making a proffer of the proposed testimony.

¶12.    It appears that, had the issue been fully litigated, the cross-examination may have been permissible under Mississippi Rule of Evidence 608(b).  But that rule was never cited, nor was its substance argued to the trial court.  "Our law is clear that an appellant must present to us a record sufficient to show the occurrence of the error he asserts and also that the matter was properly presented to the trial court and timely preserved."  *Young v. State*, 891 So. 2d 813, 819 (¶14) (Miss. 2005).  We conclude that the issue was waived and that, in any event, the record is insufficient to find reversible error on this point.

## 3. Weight and Sufficiency of the Evidence

¶13. Next, Catledge argues that his conviction was unsupported by sufficient evidence, or, in the alternative, that it was against the overwhelming weight of the evidence. Without belaboring the point, the victim testified at trial to repeated acts of sexual intercourse with Catledge, and Catledge's confession to a single instance of sexual intercourse with the victim was admitted into evidence. Catledge denied the charges when he testified in his own defense, but this presented a simple conflict in the evidence. Credibility was an issue for the jury to resolve. *Ewing v. State*, 45 So. 3d 652, 655 (¶15) (Miss. 2010).

¶14. Catledge's arguments on appeal are centered around his contention that the testimony of the victim required corroboration. Obviously, her testimony was corroborated by Catledge's confession; but even if it were not, corroboration is required only where the victim's testimony is discredited or contradicted by other credible evidence. *See Archer v. State*, 118 So. 3d 612, 618 (¶9) (Miss. Ct. App. 2012).

¶15. Catledge's arguments on these issues are clearly without merit.

### 4. Cumulative Error

¶16. As we find no individual errors have been shown, we find no cumulative error.

¶17. **THE JUDGMENT OF THE CIRCUIT COURT OF WINSTON COUNTY OF CONVICTION OF STATUTORY RAPE AND SENTENCE OF TWENTY YEARS, WITH TWELVE YEARS TO SERVE, EIGHT YEARS SUSPENDED FOR A PERIOD OF FIVE YEARS, AND FIVE YEARS OF SUPERVISED PROBATION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND**

**IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**