DICKINSON, Presiding Justice,
for the Court:
¶ 1. Shawn States was found guilty of capital murder for killing Justin Howard and Antoine Reece while in the commission of armed robbery. States brings three arguments on appeal: (1) the prosecution discriminated based on race and gender in its peremptory strikes; (2) the trial court failed to grant circumstantial-evidence instructions; and (3) the trial court improperly granted the prosecution a “flight” instruction. Because we find no reversible error, States’s conviction is affirmed.
BACKGROUND
¶2. Antoine Reece’s flaneé discovered his dead body at the bottom of the staircase in his apartment. Jackson police later discovered the body of Howard in Reece’s apartment as well.
¶ 3. At the crime scene, investigators found two guns, one projectile, and several spent shells. The Mississippi Crime Laboratory determined that two bullets the coroner found in the bodies — although not fired by either of the guns found at the scene — were fired from the same weapon. The gun that fired the fatal bullets was not recovered, and no forensic evidence linking States to the crime was found.
¶ 4. Police initially thought one of the bodies discovered in Reece’s apartment was States’s, but States’s mother quickly reached him by telephone. States told her he had flown to New York and was with a friend. To reach him, States gave his mother a phone number, but the police found that the phone number was registered to Arianna Torrenegra — States’s girlfriend — and had a Florida area code. A quick check confirmed that no person by the name of States had flown to New York that week.
¶ 5. Later, both Reece’s and Howard’s families notified police of activity on the mens’ credit cards, in and around the Miami, Florida, area. Miami police arrested States and Torrenegra in a black 1994 Jaguar registered to Reece. Jackson police then drove to Miami to interview States. At trial, the prosecution put the videotape and transcription of the interview into evidence.
¶ 6. During the interview, States claimed that a man named Jonathon Tarver had shown up at Reece’s apartment while he and Howard were there, and that Tarver wanted to rob Reece to recover money Reece owed him on a drug deal. States said he had agreed to the robbery because Reece owed him as well. States also admitted that he knew what was going to happen when Tarver went upstairs, so he turned up the volume on the television before Tarver killed Howard. States then told investigators that he and Tarver waited for Reece to return to the apartment, and that he was standing outside when Reece returned. According to States, Tar-ver shot Reece as Reece went upstairs to look for Howard, causing his body to fall down the stairs.
¶ 7. States told investigators that he and Tarver left Jackson around 6:00 p.m. in Reece’s Jaguar, heading for Florida. He said he dropped Tarver off in Jacksonville and drove to Miami to see Torrenegra, who was scheduled for deployment to Iraq in two weeks. States claimed he used the credit cards because they were in the Jaguar, and that Reece owed him a lot of money from an identity-theft scheme. He could not, however, explain why he had Howard’s credit cards. Jackson police eventually concluded that “Tarver” was fictitious, and that States was the actual shooter.
¶ 8. At trial, States recanted the statements made to investigators, claiming that *753 he had made the statements because police had coerced him by threatening to charge Torrenegra. States admitted that Tarver was fictitious, but denied any knowledge of the murders. States also admitted that he had used the victims’ credit cards, but said that Reece had agreed to sell him the Jaguar, and that he already had paid $8,000 toward the purchase.

Voir dire

¶ 9. At States’s trial in the Hinds County Circuit Court, First Judicial District, during voir dire, the State struck seven consecutive African-American female venire-members. States — an African-American male — made a Batson[1] challenge, arguing that on panel one, three people were excluded for cause, leaving nine potential jurors, and the State struck four from that panel, all of whom were African-American females, leaving five potential jurors remaining on panel one, four of whom were white. States challenged the strikes on the ground that they were systematically discriminatory on the basis of race and gender.
¶ 10. The State offered several arguments against States’s challenge. First, the State argued that it did not use all of its available strikes, and that the majority of the venire was female, many of whom were African-American. The State also stated that it had accepted three black females and three black males on the jury when it still had strikes remaining.
¶ 11. The trial judge looked at the totality of the strikes — not just at panel one— and stated that the occurrence could have been based on “happenstance.” After discussing the arguments, the court overruled the objection, finding that States had failed to establish a prima facie case of discrimination. Thus, the court did not require the State to come forward with any race-neutral or gender-neutral reasons for its peremptory strikes.
¶ 12. After the court’s ruling, the State struck two more veniremembers, but the record does not provide the race of the State’s final peremptory strikes. Neither the racial nor gender makeup of the venire and final jury are in the record.

Circumstantial-evidence instructions

¶ 18. States proposed three circumstantial-evidence jury instructions: D-2, D-4, and D-6. Instructions D-2 and D-6 were standard circumstantial-evidence instructions, and D-4 was a “two-theory” instruction.
¶ 14. The State argued that States was not entitled to a circumstantial-evidence instruction, because States had admitted that he had participated in the armed robbery and that the victims had died as a result. States, however, argued that, because he had recanted the statements, the trial court should not consider his admissions as direct evidence. After hearing both arguments, the trial court refused States’s proposed circumstantial-evidence instructions.

Flight instruction

¶ 15. States also objected to the State’s S-5 “flight instruction.”[2] The State argued that the flight instruction should be given because States did not give a reasonable explanation of his trip to Florida. States, however, argued that he gave adequate testimony that he went to Florida to see his girlfriend — not to flee a crime. The trial court looked at the totality of the situation — that States took the car belonging to one of the victims, along with many of the victim’s personal identifications, credit cards, military items, and so on. *754 The court also noted that States had taken the car instead of flying to Miami as he originally had planned. Accordingly, the court ruled that the jury could find that States fled out of a conscious sense of guilt and allowed the State’s flight instruction.

Verdict

¶ 16. On May 21, 2010, a jury in Hinds County Circuit Court found States guilty of capital murder while in the commission of armed robbery. States was sentenced to two terms of life in prison, without the possibility of parole, to be served consecutively. The trial court denied States’s motion for a new trial.
¶ 17. On appeal, States argues that (1) the trial court erred in overruling his Bat-son challenge; (2) the trial court erred in refusing to grant his circumstantial-evidence instructions; and (8) the trial court erred in granting the prosecution’s flight instruction. Finding no error, we affirm.
ANALYSIS
¶ 18. This Court gives great deference to a trial court’s determination on a Batson challenge.[3] And a trial court’s decision will not be overturned “ ‘unless the record indicates the ruling was clearly erroneous or against the overwhelming weight of the evidence.’ ”[4] We review a trial court’s decision to grant or deny a jury instruction under an abuse-of-discretion standard.[5]
The trial court did not err in overruling States’s Batson challenge.
¶ 19. Citing Batson v. Kentucky,[6] States argues that the State exercised its peremptory strikes in a discriminatory manner. In Batson, the United States Supreme Court held that the prosecution may not use its peremptory strikes to discriminate.[7] We analyze a Batson challenge using a three-part test:
First, the party objecting to the peremptory strike of a potential juror must make a prima facie showing that race was the criterion for the strike. Second, upon such a showing, the burden shifts to the State to articulate a race-neutral reason for excluding that particular juror. Finally, after a race-neutral explanation has been offered by the prosecution, the trial court must determine whether the objecting party has met its burden to prove that there has been purposeful discrimination in the exercise of the peremptory strike, i.e., that the reason given was a pretext for discrimination.[8]
¶ 20. Here, States made his Batson challenge when the State struck its first seven potential jurors, all of whom were African-American females. The trial court, however, found that States did not make a prima facie showing of discrimination; thus, the court did not require the State to come forward with neutral reasons for excluding the potential jurors.
*755 ¶ 21. To establish a prima facie case, defendants must establish that (1) they are members of a cognizable class, such as a racial group; (2) the prosecution used peremptory strikes to remove venire-members in that class; and (3) the facts and circumstances give rise to an inference that the prosecution used peremptory strikes to purposefully remove individuals of that class.[9] The Fourteenth Amendment also prohibits discrimination based on gender.[10] But in Powers v. Ohio, the Supreme Court modified that test.[11] Under Powers, a defendant has standing to challenge the exclusion of a juror even if that juror is not of the defendant’s race.[12]
¶ 22. When determining whether a defendant has established a prima facie case of discrimination, we must consider all relevant circumstances.[13] And a defendant can establish a prima facie case by “demonstrating that the percentage of the State’s peremptory strikes exercised on members of the protected class was significantly higher than the percentage of members of the protected class in the veni-re.” [14]
¶ 23. In Pitchford v. State, the racial makeup of the venire subject to peremptory strikes was fourteen whites (seventy-four percent) and five blacks (twenty-six percent).[15] The prosecution, however, used fifty-seven percent of its strikes on African-Americans.[16] Because of this difference, we upheld the trial court’s determination that the defendant had established a prima facie case of discrimination.[17]
¶ 24. But the record here does not contain the percentage of African-Americans in the venire. And as this Court stated in Birkhead v. State, “[w]e cannot override the trial court when this Court does not even know the racial makeup of the venire or the jury.”[18] In Birk-head, the first five jurors struck by the prosecution were African-American.[19] We found the record insufficient to overturn the jury verdict.[20]
¶ 25. Likewise, we decline to reverse the trial judge’s decision in this case when we do not know the race and gender of the venire, the race and gender of the final jury, or the race and gender of the other potential jurors struck by the State. The presumption is in favor of the trial court, and the burden is on the appellant to demonstrate reversible error.[21] Thus, the trial court’s decision was not clearly erroneous.
The trial court did not err in refusing to grant States’s circumstantial-evidence instructions.
¶ 26. The trial court refused all three of States’s proposed circumstantial-evidence *756 instructions, finding the numerous statements made by States to be direct evidence. Instructions D-2 and D-6 were standard circumstantial-evidence instructions, while instruction D-4 was a two-theory instruction. This Court, however, applies the same analysis to a two-theory instruction as it does all other circumstantial-evidence instructions.[22]
¶ 27. When a case is based entirely on circumstantial evidence — as opposed to direct evidence — the jury is instructed that every other reasonable hypothesis, except that of guilt, must be excluded to convict.[23] And circumstantial evidence is evidence that, “without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist.”[24] Further, this Court has stated that “examples of direct evidence include an admission or confession by the defendant to ‘a significant element of the offense,’ or eyewitness testimony ‘to the gravamen of the offense charged.’ ”[25] But if any “serious doubt exists as to whether an instruction should be included, the doubt should be resolved in favor of the defendant.”[26]
¶ 28. Here, no forensic evidence linked States to the crime, and no eyewitness testified. The question, then, is whether States’s statement to police was an admission or confession to a significant element of felony murder. In defining “confession” and “admission,” this Court has said:
A confession is an acknowledgment in express terms of the confessor’s guilt of the crime charged. An admission is a statement by the accused, direct or implied, of facts pertinent to the issue, and tending, in connection with other facts, to prove his guilt.[27]
¶ 29. The grand jury indicted States under Mississippi Code Sections 97-3-19(2)(e) and 97-3-79 for killing Howard and Reece in the commission of armed robbery. Under Mississippi Code Section 97-3-19(e), the State was required to prove that States (1) killed Howard and Reece (2) without authority of law (3) while engaged in the commission of armed robbery.[28] And for armed robbery, the State was required to prove that States (1) took or attempted to take (2) personal property (3) from the person of another (4) by violence or by putting such person in fear of immediate injury by exhibiting a deadly weapon.[29]
¶ 30. States argues that he denied ever handling a gun and that he gave his taped statement only because the police threatened to charge his girlfriend with the murders. States also argues that his statement — which he recanted at trial — cannot be considered direct evidence. The State, however, says that States admitted to participating in the armed robbery and to capital murder: first, by confessing to being in the apartment with the intent to rob *757 Reece; and second, by confessing that he turned up the volume on the television when Tarver (whom States admits to be fictitious) was about to shoot Howard. Although States later recanted these statements, the State says that recanting the statements does not make the evidence circumstantial — we agree.
¶ 31. In Lynch v. State, this Court held that the defendant’s case was not a “purely circumstantial case” where the defendant was convicted of acting in concert with another in killing a person in the course of a robbery.[30] There, the defendant knew his accomplice was armed and was going to search for a car.[31] Later, the two men cruised parking lots and followed a car to the owner’s home, where the defendant’s accomplice stole the car after shooting its owner.[32] The defendant, though, said that he did not know that his accomplice was going to shoot the victim; but when police asked the defendant about the events leading up to the shooting and whether his accomplice was going to carjack someone, the defendant responded: “I think so. I don’t know.”[33]
¶ 32. We found that the statement was “an admission against interest of the underlying felony.”[34] Thus, the intent to rob, which is necessary to prove the underlying felony, could be “shown from the facts surrounding the crime.”[35]
¶ 33. Although States did not confess or admit to handling a gun or personally shooting Howard and Reece, he admitted to turning up the volume on the television when the fictitious Tarver was going to shoot them. States, therefore, admitted that he was in the apartment when the murders occurred, and that he participated in the murders as well. Further, States admitted taking Reece’s vehicle after the murders, which supplied the underlying felony necessary for capital murder.
¶ 34. Although States said Tarver had murdered the two men, he later recanted the story and admitted that Tarver was fictitious. States cites no authority for the proposition that recanting an admission entitles a defendant to a circumstantial-evidence instruction. And where a defendant’s statement — recanted or not — is an admission or confession to a significant element of the crime charged, the statement remains as direct evidence.
¶ 35. States’s admission was “a statement by the accused, direct or implied, of facts pertinent to the issue, and tending, in connection with other facts, to prove his guilt.”[36] His admissions went to significant elements of murder and armed robbery. We therefore find that the trial court did not abuse its discretion when it refused States’s circumstantial-evidence instructions.
The trial court erred in granting the prosecution a jury instruction regarding unexplained flight.
¶ 36. Generally, evidence of flight “is admissible as evidence of consciousness of guilt.”[37] But “ ‘an instruction that flight may be considered as a *758 circumstance of guilt or guilty knowledge is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge.’ ”[38] We have adopted a two-prong test: (1) Only unexplained flight merits a flight instruction; and (2) flight instructions are to be given only in cases where that circumstance has considerable probative value.[39] Neither prong of the test is met here.
¶ 37. The trial court looked at States’s actions immediately following the murders — that he took the car belonging to one of the victims, that he took many of the victim’s personal items, that he took the car instead of flying — and accepted the State’s flight instruction. But States provided an explanation for his trip to Miami — that he was going to see his girlfriend, Torrenegra, who was about to be deployed to Iraq; indeed, police arrested States while he was with Torrenegra. Also, driving the car to Miami in the absence of any evidence of a pursuit, or States’s belief that he was about to be discovered, renders a flight instruction almost void of any probative value in this case. Accepting the State’s argument, a defendant — in order to avoid a flight instruction — would be required to remain at the scene until police arrived.
¶ 38. However, in the context of the overwhelming evidence of States’s guilt, we And the trial court’s error in giving the flight instruction harmless. An error is harmless if “ ‘it is clear beyond a reasonable doubt that it did not contribute to the verdict.’ ”[40] Here, States admitted that he was in the apartment when Howard and Reece were killed and that he took Reece’s car to Florida. He also admitted that Tarver did not exist — the person who States had said murdered Howard and Reece. Thus, according to States, he was the only person inside the apartment when Howard and Reece were killed. Accordingly, the trial court’s error did not contribute to the verdict.
CONCLUSION
¶ 39. The Hinds County Circuit Court did not commit clear error by not requiring the State to come forward with race-neutral or gender-neutral reasons for its peremptory strikes. Likewise, the court did not abuse its discretion in refusing States’s circumstantial-evidence instructions. The trial court erred in granting the State’s flight instruction, but the error was harmless. Accordingly, we affirm States’s convictions and sentences.
¶ 40. COUNT I — CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT THE POSSIBILITY OF PAROLE, AFFIRMED. COUNT II — CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT THE POSSIBILITY OF PAROLE, AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY TO EACH OTHER.
WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, CHANDLER, *759 PIERCE AND KING, JJ., CONCUR. CARLSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J, DICKINSON, P.J., LAMAR AND CHANDLER, JJ. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.

. Batson v. Kentucky, 476 U.S. 79, 82-84, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

. Interestingly, the S-5 "flight instruction” is not in the record.

. Berry v. State, 802 So.2d 1033, 1037 (Miss.2001) (citing McGilberry v. State, 741 So.2d 894, 923 (Miss.1999)). See Batson, 476 U.S. at 82-84, 106 S.Ct. 1712.

. Thorson v. State, 721 So.2d 590, 593 (Miss.1998) (quoting Lockett v. State, 517 So.2d 1346, 1350 (Miss.1987)).

. McInnis v. State, 61 So.3d 872, 875 (Miss.2011) (citing Davis v. State, 18 So.3d 842, 847 (Miss.2009)).

. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

. Id. at 82-84, 106 S.Ct. 1712.

. Pitchford v. State, 45 So.3d 216, 224 (Miss.2010) (emphasis added) (citing Flowers v. State, 947 So.2d 910, 917 (Miss.2007)).

. Batson, 476 U.S. at 96, 106 S.Ct. 1712 (citations omitted).

. J.E.B. v. Alabama, 511 U.S. 127, 146, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

. Id. at 416, 111 S.Ct. 1364.

. Id. (quoting Batson, 476 U.S. at 96-97, 106 S.Ct. 1712).

. Pitchford, 45 So.3d at 225 (citing Flowers, 947 So.2d at 935 (Miss.2007)).

. Id.

. Id.

. Id. at 226.

. Birkhead v. State, 57 So.3d 1223, 1230 (Miss.2011).

. Id. at 1230.

. Id.

. Id. at 1231 (quoting Juarez v. State, 965 So.2d 1061, 1065 (Miss.2007)).

. McInnis v. State, 61 So.3d 872, 876 (Miss.2011).

. See Hughes v. State, 983 So.2d 270, 278 (Miss.2008) (citing Jones v. State, 797 So.2d 922, 927 (Miss.2001)).

. Keys v. State, 478 So.2d 266, 268 (Miss.1985).

. Kirkwood v. State, 52 So.3d 1184, 1187 (Miss.2011) (quoting Mack v. State, 481 So.2d 793, 795 (Miss.1985)).

. Davis v. State, 18 So.3d 842, 847 (Miss.2009) (citing Stringfellow v. State, 595 So.2d 1320, 1322 (Miss.1992)).

. Reed v. State, 229 Miss. 440, 91 So.2d 269, 272 (1956) (emphasis added) (citing Pringle v. State, 108 Miss. 802, 67 So. 455 (1915)).

. Miss. Code Ann. § 97-3-19(2)(e) (Rev. 2006).

. Miss.Code Ann. § 97-3-79 (Rev.2006).

. Lynch v. State, 877 So.2d 1254, 1265 (Miss.2004).

. Id. at 1261.

. Id.

. Id. at 1265.

. Id.

. Id. at 1266.

. See Reed, 91 So.2d at 272 (citing Pringle, 67 So. at 457).

. Liggins v. State, 726 So.2d 180, 183 (Miss.1998) (citing Fuselier v. State, 702 So.2d 388, 390 (Miss.1997)).

. Brown v. State, 690 So.2d 276, 294 (Miss.1996) (quoting Fuselier v. State, 468 So.2d 45, 57 (Miss.1985)) (emphasis added).

. Randolph v. State, 852 So.2d 547, 564-65 (Miss.2002) (quoting Banks v. State, 631 So.2d 748, 751 (Miss.1994)).

.Kolberg v. State, 829 So.2d 29, 51 (Miss.2002) (quoting Conley v. State, 790 So.2d 773, 793 (Miss.2001)).