FAIR, J., for the Court:
¶ 1. Perry Jackson was found guilty by a Washington County jury of two counts of capital murder and one count of aggravated assault. Jackson was sentenced to life without parole on each capital-murder count. The trial judge also imposed a consecutive sentence of twenty years for the aggravated-assault count, which was increased by a firearms enhancement of five years.
1f 2. Jackson appeals, asserting error in (1) the trial court’s giving of a flight instruction, and (2) the trial court’s failure to suppress a statement he gave after invoking his right to counsel. Additionally, he urges that neither of the assigned errors can be considered harmless, which mandates reversal of his conviction. Finding no error, we affirm the decision of the trial court.
FACTS
¶ 3. Eugene Pearson was dating Jackson’s ex-wife, Florida. On the morning of April 13, 2010, Pearson awoke to find Jackson straddling him, armed with both a firearm and a knife. The two struggled, and Pearson was shot twice — once in the face and once in the arm. Pearson saw Jackson grab Florida’s daughter-in-law, Clarissa King, and put the firearm to her temple, forcing her and her husband, Kelly King, into the laundry room. During this time, Pearson had locked himself in the bedroom, eventually fleeing to a neighbor’s house for help. Pearson heard a single shot before he left the house. Florida called 911 after receiving a phone call from her neighbor, who had seen Jackson crawl out of Florida’s window after the shooting. When the police arrived, they found Kelly and Clarissa, both dead from gunshot wounds, in the laundry room.
¶ 4. Jackson shared an apartment with his cousin, Benny Frazier, at the time. Hours before the shooting, Jackson and his girlfriend, Vanessa Hall, had gone to the apartment. At Jackson’s request, Frazier dropped Jackson off near Florida’s home around 6:30 a.m. Jackson called his uncle, Charles Jackson, later that morning, asking for a ride to Arkansas. Charles then contacted his son, Joseph Sanders, and they rode together to pick up Jackson from his mother’s home. During the car ride, Jackson told Charles and Sanders he had shot three people. Jackson also stated that he fled the house after the shooting, hid in a swamp until the police left, and stole a truck to get away. After arriving in Arkansas, Charles and Sanders dropped off Jackson with Hall and went back to Mississippi.
¶ 5. Jackson was found and arrested by U.S. Marshals in Arkansas. After Jackson was transported from Arkansas to the Greenville Police Department, two officers read him his Miranda[1] rights. Jackson then signed a waiver and admitted he shot Clarissa, Kelly, and Pearson. Jackson added that after he met up with Hall in Arkansas, she took him to Moscow, Arkan *921 sas, to wait for another ride. Later, Jackson recanted, alleging that two men forced him to the scene and committed the murder. Jackson told Chief Investigator De-jando Wilson that he thought the two men had taken $18,000 from the scene, further asserting Kenny King, Florida’s other son, had just been picked up by the U.S. Drug Enforcement Administration. Both Jackson’s confession and retraction of his confession were presented to the jury. At the close of trial, the jury returned a guilty verdict.
ISSUES
1. Flight Instruction
¶ 6. During trial, Jackson’s counsel objected to the following flight instruction:
The Court instructs the Jury that “flight” is a circumstance from which guilty knowledge and fear may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the Defendant, PERRY JACKSON, did flee or go into hiding, such flight or hiding is to be considered in connection with all the other events in this case. You will determine from all the facts whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt or innocence of the Defendant.
¶ 7. Our supreme court has consistently held “it is a well-established principle that flight is admissible as evidence of consciousness of guilt.” Fuselier v. State, 702 So.2d 388, 890 (¶ 4) (Miss.1997). However, a flight instruction “is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge.” Id. (quoting Reynolds v. State, 658 So.2d 852, 856 (Miss.1995)). “When determining whether a flight in-struetion is appropriate, ... two considerations are paramount: (1) only unexplained flight merits a flight instruction, and (2) flight instructions are to be given only in cases where that circumstance has considerable probative value.” Id. (citations omitted). If an independent reason exists for the flight, then the evidence of flight is inadmissable. Id.
¶ 8. Jackson claims that his reason for going to Arkansas, to see his girlfriend, created an independent reason for his flight. See States v. State, 88 So.3d 749, 758 (¶¶ 37-38) (Miss.2012) (finding harmless error in the trial court’s giving of flight instruction where defendant stated he went out of state to see his girlfriend). In Jackson’s confession, he stated that Hall took him from Pine Bluff, Arkansas, to Moscow, Arkansas, where he caught another ride. Also, it is uncontested that Hall was with Jackson in Mississippi the morning of the shooting. There was no evidence indicating that Jackson had any prior plans to travel to Arkansas to see Hall. Further, Jackson’s actions following the shooting — fleeing Florida’s home, hiding in a swamp, stealing a truck, catching a ride to Arkansas to meet Hall, and then going with Hall to catch another ride to Moscow — are undoubtedly probative of Jackson’s guilty knowledge. Therefore, we find that the flight instruction was properly given.
¶ 9. Jackson’s reason for going to Arkansas is contradicted by the evidence. Further, the circumstances surrounding Jackson’s flight have considerable probative value. Therefore, we find that the trial court did not err in giving a flight instruction. This issue is without merit.
2. Jackson’s Statement
¶ 10. Jackson also argues that the trial court erred in its denial of his motion to suppress his statement made to the *922 Greenville Police Department following the shooting. Jackson claims he invoked his right to counsel in Arkansas and was later questioned by Mississippi officers. In support of his argument, Jackson cites to Minnick v. Mississippi, 498 U.S. 146, 156, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), where the United States Supreme Court held that once the accused asks for counsel, all interrogation must cease and cannot begin again until counsel is present.
¶ 11. Minnick is readily distinguishable from this case. Both cases involve the suppression of a confession, but the circumstances leading up to Minnick’s confession were notably different. In Minnick, Minnick was arrested on a Mississippi warrant for capital murder. Id. at 146, 111 S.Ct. 486. An interrogation by federal law enforcement officials ended when he requested a lawyer. Id. The FBI report indicated that the agents read Minnick his Miranda warnings, and that he acknowledged that he understood his rights. Id. at 148, 111 S.Ct. 486. Minnick spoke with his counsel several times after his meeting with the FBI. Id. Sometime after Minnick met with his counsel, a county deputy sheriff came to the jail to question him. Id. The deputy advised Minnick of his rights, reinitiated interrogation, and obtained a confession. Id. The Court ultimately found that Minnick’s confession should have been suppressed by the trial court, stating that, “[sjince [Minnick] made a specific request for counsel before the interview, the police-initiated interrogation was impermissible.” Id. at 156, 111 S.Ct. 486.
¶ 12. Here, the only evidence to support that Jackson requested counsel is Jackson’s own statement. There is no report or any other evidence indicating that Jackson asked for counsel at any time, as was the case in Minnick. At the suppression hearing, Jackson stated that he told two female officers at the police station in Pine Bluff, Arkansas, that he wanted a lawyer. When asked to describe the women, Jackson responded he was only with them for a couple of hours and therefore could not describe them. Based on the scant evidence regarding Jackson’s alleged invocation of counsel, we find this argument to be without merit.
¶ 13. This court cannot reverse a trial court’s denial of a motion to suppress unless: the incorrect legal principle was applied; there was no substantial evidence to support a voluntary, knowing, and intelligent waiver of Miranda rights; and the denial was a result of manifest error. Chim v. State, 972 So.2d 601, 604-05 (¶¶ 11-13) (Miss.2008). The standard of manifest error is high, and this court must affirm unless the trial judge’s ruling is against the substantial evidence. Id. at 605 (¶ 13).
¶ 14. In order for a confession to be determined knowing and voluntary, the trial judge must find beyond a reasonable doubt that the defendant was given his Miranda rights prior to any custodial interrogation. Armstead v. State, 978 So.2d 642, 645-646 (¶ 11) (Miss.2008). Our supreme court has held that the State’s “burden [of proving a voluntary confession] is met by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward.” Bell v. State, 963 So.2d 1124, 1134 (¶ 26) (Miss.2007). Such testimony “creates a prima facie case for the State on the question of voluntariness.” Id.
¶ 15. The defendant is entitled to offer testimony to the contrary, at which point the State must offer the testimony of the officers who witnessed the confession. See id. We also have held that “the resolution of conflicting testimony regarding volun- *923 tariness is a question of fact to be resolved by the trial judge at the suppression hearing.” Chase v. State, 645 So.2d 829, 841 (Miss.1994). In determining voluntariness, the court must look at the “totality of the circumstances” surrounding the statement. Davis v. State, 551 So.2d 165, 169 (Miss. 1989).
¶ 16. At Jackson’s trial, a signed Miranda waiver, a signed and initialed confession, and a recording of the confession were admitted into evidence. Additionally, the officers who read Jackson his Miranda rights and took his confession testified at trial. Jackson rebutted the officers’ testimonies, claiming that, in Arkansas, he told Investigator Wilson of the Greenville Police Department that he wanted an attorney. Jackson also stated that he asked Investigator Wilson for an attorney after he was booked in Greenville.
¶ 17. Investigator Wilson testified that Jackson did not ask him for an attorney, nor did any of the officers in Arkansas notify him that Jackson made a request. Investigator Wilson stated that he picked up Jackson from Arkansas and that he did not question Jackson at any time during the drive from Arkansas to Greenville, Mississippi. Investigator Wilson further explained that he, along with Sergeant Michael Merchant, did not question Jackson until after he was booked at the Greenville Police Department and was read his Miranda rights. Investigator Wilson and Sergeant Merchant both testified that Jackson was not coerced or threatened in any way.
¶ 18. We find that there was credible evidence to allow Jackson’s confession into evidence. Further, the judge properly considered the totality of the circumstances to determine if Jackson intelligently, knowingly, and voluntarily waived his Miranda rights. See Martin v. State, 854 So.2d 1004, 1007 (¶ 4) (Miss.2003). Jackson’s signed Miranda waiver, along with his confession and the officers’ testimonies, is evidence of a knowing and voluntary confession. See id. at (¶¶ 5-6).
¶ 19. In order for this court to reverse the trial court’s denial of the motion to suppress, there must be a lack of credible or substantial evidence to support the denial. Armstead, 978 So.2d at 646 (¶ 11). We find that the judge’s decision was substantiated by sufficient evidence in the record. Therefore, we must affirm the denial of Jackson’s motion.
3. Cumulative Error
¶ 20. Jackson finally argues that because the flight instruction was erroneously given and because his confession should have been suppressed, the cumulative effect of those two errors requires setting aside his conviction and sentence and giving him a new trial — even though the record is replete with other independent evidence of his guilt.
¶ 21. Jackson’s argument, however, must fail, since, in addition to the overwhelming evidence of his guilt apart from his confession, his confession was properly before the jury and the flight instruction was not given erroneously. “Where there is no reversible error in any part, there is no reversible error to the whole.” Williford v. State, 820 So.2d 13, 23 (¶ 39) (Miss. Ct.App.2002) (internal quotation marks omitted). Jackson’s cumulative-error argument is, therefore, without merit.
¶ 22. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF TWO COUNTS OF CAPITAL MURDER AND SENTENCE ON EACH COUNT OF LIFE WITHOUT ELIGIBILITY FOR PAROLE, AND CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS PLUS A *924 FIVE-YEAR SENTENCE ENHANCEMENT, WITH ALL SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).