KITCHENS, JUSTICE,
DISSENTING:
¶45. I respectfully dissent for two reasons. First, I find that the flight instruction was not warranted in this case. Second, as I previously have written, I would abolish the flight instruction altogether.
¶46. In the present case, Instruction S-7 informed the jury:
[T]hat “flight” is a circumstance from which guilty knowledge and fear may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the Defendant, DANER FORD, did flee or go into hiding, such flight or hiding is to be considered in connection with all other events in this case. You will determine from all the facts whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt of [sic] innocence of the Defendant, DAN-ER FORD.
Ford objected at trial to Instruction S-7, arguing that the fact police were searching for Ford days after the crime did not constitute an evidentiary basis to warrant a flight instruction: “Because he doesn’t turn himself in, because he’s not readily apparent when [the police are] looking for him, doesn’t mean he was in flight.” I agree.
■ ¶47. The majority correctly relates that “(1) [o]nly unexplained flight merits a flight instruction; and (2) flight instructions are to be given only in cases where that Circumstance has considerable probative value.” States v. State, 88 So.3d 749, 758 (Miss.2012) (citations omitted). But, more fundamentally, “[o]ur law is well-settled that jury instructions are not given unless there is an evidentiary basis in the record for such.” Fairchild v. State, 459 So.2d 793, 800 (Miss.1984) (citing Colburn v. State, 431 So.2d 1111, 1114 (Miss.1983)).
¶48. In Pannell v. State, this Court reversed an aggravated assault conviction because “there is absolutely no foundation in the record before us on which to base a flight instruction.” Pannell v. State, 455 So.2d 785, 788 (Miss.1984). The Court observed that:
Charles Pannell testified that following the shooting he dropped off his sister at her home and went directly to another sister’s home with whom he had been staying. Once there, he immediately phoned the sheriffs office to report the incident. Pannell then made an unsuccessful attempt to contact his attorney. The following morning after Pannell had the opportunity to discuss the matter with his attorney, and after that attorney spoke with the sheriff, Pannell voluntarily surrendered. Pannell’s explanation for his departure from the scene of the shooting was wholly uncontradicted and certainly ■ not incredulous or unbelievable. Charles Pannell’s flight, if it was such, was completely explained and under the facts of this case no flight instruction was warranted.

Id.

¶49. In Anderson v. State, the Mississippi Court of Appeals distinguished Pannell by finding that the State had “offered evidence tending to show that Anderson attempted to avoid law enforcement authorities for a three-and-a-half-month period, including the day of his arrest.” Anderson v. State, 1 So.3d 905, 915-16 (Miss.Ct.App. 2008), cert. denied, 999 So.2d 1280 (Miss. *500 2009)). After the crime itself, police “were unable to determine Anderson’s whereabouts even though they checked his residence, as well as neighborhoods and other locations where he was known to be seen.” Id. at 916. A confidential informant reported “that Anderson had ‘skipped town’ and gone to Tennessee.” Id. Three months later, another confidential informant notified police that Anderson had returned to Greenwood and, ultimately, Anderson was located hiding underneath a house. Id. The court found a flight instruction to have been warranted because, unlike in Pan-mil,, Anderson’s “flight was never fully explained.” Id.
¶50. The majority finds that Ford “has failed to provide a ‘reason independent of the crime’ to explain why he hid in the attic of his mother’s house, rendering his flight ‘unexplained.’ ” (Maj. Op. ¶ 22) (citing Harrell v. State, 134 So.3d 266, 276 (Miss.2014) (“Harrell’s flight from Jackson to dispose of the body in Holmes County was unexplained by anything other than guilt or guilty knowledge.”)). But the State is not entitled to a flight instruction unless an evidentiary foundation exists in the record to support its giving. And not a shred of evidence exists in this record to suggest that Ford fled from the crime scene.
¶51. As the majority recognizes, during the day of September 7, 2008,[4] Ford appeared at the police station and gave a recorded statement, after which he was free to leave. Warrants for the arrest of Ford and his fellow suspects were issued on September 8, 2008. A twenty-four-hour surveillance was set up outside Ford’s mother’s house, and a trap-and-trace device, which tracks signals from cellular telephones, was activated on September 11, 2008. Ford’s lawyer was unable to get in touch with him. On September 15, 2008, a signal from Ford’s cellular telephone was received and, after receiving permission to search Ford’s mother’s house, law enforcement located and apprehended Ford in the attic.
¶52. As in Parnell, in which Pannell reported the incident to police, Ford reported, of his own volition, to the police station and gave a recorded statement. After giving the statement, Ford left the police station a free man. No evidence exists that the police informed him at that time that he was a suspect and ought to remain at hand to be arrested in the event of his being charged. This case is unlike Anderson, in which Anderson fled the scene of the crime and disappeared for three-and-a-half months prior to his apprehension and, according to a confidential informant, “skipped town.” Ford left the crime scene and went to the police station. The State recognizes that “the authorities were only able to find Ford after he turned on his cellular telephone and they traced the phone to his mother’s house.” But merely because Ford’s phone was turned off and the police, consequently, were unable to locate him is not evidence that he fled the scene of the crime, much less that he fled arrest, because there is no evidence that he was aware a warrant had been issued for his arrest. Ostensibly, Ford went to the home of his mother after leaving the police station on September 7, 2008, and remained there until the point of his apprehension by police.
¶53. Even more troubling is the majority’s finding that this is a case in which the circumstance of Ford’s purported flight has considerable probative value. The majority supports that finding by saying, first, that “by the time that the police searched Daner Ford’s mother’s house, Daner Ford’s family members and friends had been arrested and charged with Stuck-ett’s murder.” (Maj. Op. ¶ 22). Second, *501 according to the ■ majority, Ford’s “own videotaped statement placed him with the persons that had been arrested for Stuek-ett’s murder.” (Maj. Op. ¶ 22). Consequently, the majority concludes that Ford’s flight was a “ ‘circumstance of considerable probative value.’ ” (Maj. Op. ¶ 22).
¶54. This Court considered whether a flight instruction was warranted in a case in which “the ‘hiding' at the time of arrest occurred more than three weeks after the armed robbery.” Ervin v. State, 136 So.3d 1053, 1060 (Miss.2014) (emphasis in original). The Court found that “no evidence exists that Charles [Ervin] knew for what charges law enforcement officers came to arrest him; and Charles ‘fled’ or ‘hid’ in his own attic, which had no exit, for a few moments while his girlfriend informed law-enforcement officials of his whereabouts.” Id. The Court continued:
We question whether evidence of flight in this case, where the defendant hid in his own attic (with no exit) from law-enforcement agents during an arrest for a crime that occurred three weeks prior, while the “escapee” had no knowledge of the crime for which he was being arrested, is remotely probative of guilt, much less considerably probative of guilt. Courts should examine the facts of each specific case when considering a flight instruction; however, the longer the time period between the crime and the flight, the more arduously a court should scrutinize its probative value. See United States v. Myers, 550 F.2d 1036, 1051 (5th Cir.1977) (“The more remote in time the alleged flight is from the commission or accusation of an offense, the greater the likelihood that it resulted from something other than feelings of guilt concerning that offense.”).

Id.

¶55. The Court ultimately reversed Er-vin on a separate issue, but noted that it “need not decide the issue of whether the flight instruction was error; however, because the issue may arise on remand, we note the questionable wisdom of granting it.” Id. at 1059-60. The Court then cited some language from separate opinions in prior cases expressing judicial reservations regarding the granting of flight' instructions:
“[T]he use of the flight instruction in this state can be described in one word—‘dangerous.’ ” Randolph v. State, 852 So.2d 547, 567 (Miss.2002) (Carlson, J., specially concurring, joined by Smith, P.J., Waller, and Cobb, JJ.), “[A] trial court, by giving a flight instruction, simply puts itself in a position, of possibly placing a reversible error in an otherwise clean record. If a trial court persists in giving , a flight instruction, ... it [should] do so with great caution.” Id. “[W]ith the prosecutors having been duly warned on multiple occasions about the danger of submitting flight instructions, there can be no legitimate hue and cry from the State in the future if this Court ... reverses a criminal conviction based on the trial court’s improper grant of a flight instruction, which had been improvidently submitted by the prosecutor.” States v. State, 88 So.3d 749, 759 (Miss.2012) (Carlson, P.J., Specially Concurring!, joined by Waller, C.J., Dickinson, P.J., Lamar and Chandler, JJ.]).
Id. at 1060.
¶56. The present case resembles Ervin because of the absence of evidence that Ford was aware that he was being sought by the authorities, or that he knew for what charges law enforcement officers had come to arrest him, ■ at the time he was located by the. police in his mother’s attic. The fact that family members and friends *502 of Ford had been arrested at the time of his apprehension, and the fact that Ford’s videotaped statement (which, let us not forget, he volunteered the day the crime took place at the police station) connects him to- those persons is not, as the majority claims, “a. circumstance of considerable probative value.” This Court has noted the definition of “probative” as “tending or serving to prove.” Anderson v. State, 185 So.3d 966, 970 (Miss.2015) (quoting Bryan A. Garner, A Dictionary of Modem Legal Usage 694 (2d ed. 2001)).
¶57. The circumstance—that, following Ford’s leaving the police station, the police were unable to locate him and, ultimately, after Ford activated his cellular telephone, they apprehended him in his mother’s attic—cannot be described as one of “considerable probative value” that would warrant a flight instruction. It certainly is not, as the jury was informed, “a circumstance from which guilty knowledge and fear may be inferred.” As in Ervin, I question whether the circumstance here “is remotely probative of guilt, much less considerably probative of guilt.” Ervin, 136 So.3d at 1060. Ford’s appearance at the police station on the day of the crime constitutes a material intervening factor that belies any basis for the giving of a flight instruction in this case.
¶58. “It is impossible for this Court to know whether the juxy was unduly influenced or confused by the erroneous flight instruction. To conclude that the defendant was not prejudiced as a result of the improper instruction is purely speculative.” States, 88 So.3d at 760 (Kitchens, J., dissenting). Because the flight instruction in this case was given absent a sufficient evidentiary foundation, I would reverse and remand this case to the Circuit Court of Washington County for a new trial.
¶59. I reiterate that instructing a jury that it may infer guilt .from what, is, at best, circumstantial evidence of flight, in effect relieves the State of its burden of proving every ■ material element of the crime charged beyond a reasonable doubt. I would abolish the flight instruction and hold that its use in future cases is per se reversible error. See Drummer v. State, 167 So.3d 1180 (Miss.2015) (Kitchens, J., dissenting from part II): .
DICKINSON, P.J., AND KING, J., JOIN THIS OPINION. LAMAR, J., JOINS THIS OPINION IN PART.

. The alleged crime took place in the early morning hours of September 7, 2008.